UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:15-CV-00051-GNS-HBB

WILLIAM S. HOPKINS                                                                                          PLAINTIFF

v.

AMERITAS LIFE INSURANCE CORP.                                                           DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Motion for Partial Summary Judgment. (DN 15). The motion has been fully briefed and is ripe for decision. For the reasons stated below, the motion is **GRANTED IN PART** and **DENIED IN PART**.[1]

### I.     BACKGROUND

On or about February 15, 2000, Plaintiff Williams S. Hopkins ("Hopkins") purchased a disability insurance policy.[2] (Compl. ¶ 7, DN 1-2). At the time of purchase, Hopkins worked as a self-employed endodontist in Bowling Green, Kentucky. (Compl. ¶ 8). Subsequently, in 2004, Hopkins became disabled and has been unable to return to his occupation. (Compl. ¶ 9). On or about January 16, 2004, Hopkins made a claim under the disability insurance policy and he began receiving disability income payments several days later. (Compl. ¶ 10). Those payments

---

[1] Pursuant to LR 7.1(f), Plaintiff has also filed the Motion for Hearing (DN 24). Because the Court determines that it is unnecessary to hold a hearing to address the pending motion, that motion is **DENIED**.

[2] While the policy was initially issued by Union Central Life Insurance Company of Cincinnati, Defendant Ameritas Life Insurance Corp. ("Ameritas") is the successor in interest. (Compl. ¶ 11, DN 1-2).

continued through June 18, 2014, after which Ameritas terminated the benefits due to a claimed overpayment of benefits covering the period from January 18, 2002, to June 18, 2014. (Compl. ¶ 14). Ameritas demands that Hopkins reimburse the overpayment in the amount of $83,103.20 and closed his claim effective January 18, 2012. (Compl. ¶ 14).

Hopkins initially filed his lawsuit in Warren Circuit Court, Kentucky, and Ameritas removed the case to this forum. (Notice of Removal, DN 1). In the Complaint, Hopkins alleges breach of contract, bad faith, and a violation of the Kentucky Consumer Protection Act, KRS 367.110-367.300. (Compl. ¶¶ 7-33).

## II. JURISDICTION

This Court has subject-matter jurisdiction of this matter based upon diversity jurisdiction. *See* 28 U.S.C. § 1332.

## III. STANDARD OF REVIEW

In ruling on a motion for summary judgment, the Court must determine whether there is any genuine issue of any material fact that would preclude entry of judgment for the moving party as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of stating the basis for the motion and identifying evidence in the record that demonstrates an absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party satisfies its burden, the non-moving party must then produce specific evidence proving the existence of a genuine issue of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

While the Court must view the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show the existence of some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 586 (1986) (citation omitted). Rather, the non-moving party must present specific facts proving that a genuine factual issue exists by "citing to particular parts of the materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

## IV. DISCUSSION

In its motion, Ameritas seeks partial summary judgment as to whether its policy is a non-occupational or occupational policy. (Def.'s Mem. in Supp. of Mot. for Partial Summ. J. 2). In interpreting insurance policies under Kentucky law,[3] "the construction and legal effect of an insurance contract is a matter of law for the court." *Bituminous Cas. Corp. v. Kenway Contracting, Inc.*, 240 S.W.3d 633, 638 (Ky. 2007) (citation omitted). As the Kentucky Supreme Court has stated:

> Kentucky has consistently recognized that an ambiguous policy is to be construed against the drafter, and so as to effectuate the policy of indemnity. . . . [A]mbiguous language must be liberally construed so as to resolve all doubts in favor of the insured. "[W]here not ambiguous, the ordinary meaning of the words chosen by the insurer is to be followed." Or stated another way, words which have no technical meaning in law, must be interpreted in light of the usage and understanding of the common man.

*Id.* (internal citations omitted) (citation omitted). The court has also noted, however:

> The rule of strict construction against an insurance company certainly does not mean that every doubt must be resolved against it and does not interfere with the rule that the policy must receive a reasonable interpretation consistent with the parties' object and intent or narrowly expressed in the plain meaning and/or language of the contract. Neither should a nonexistent ambiguity be utilized to

---

[3] The policy does not contain a choice of law provision. In the absence of such a provision, this Court applies the substantive law of the state in which it sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).

3

> resolve a policy against the company. We consider that courts should not rewrite an insurance contract to enlarge the risk to the insurer.

*St. Paul Fire & Marine Ins. Co. v. Powell-Walton-Milward, Inc.*, 870 S.W.2d 223, 226-27 (Ky. 1994) (citing *U.S. Fid. & Guar. Co. v. Star Fire Coals, Inc.*, 856 F.2d 31 (6th Cir. 1988)). In addition:

> [Policy] exclusions are to be narrowly interpreted and all questions resolved in favor of the insured. Exceptions and exclusions are to be strictly construed so as to render the insurance effective. Any doubt as to the coverage or terms of a policy should be resolved in favor of the insured. And since the policy is drafted in all details by the insurance company, it must be held strictly accountable for the language used.

*Eyler v. Nationwide Mut. Fire Ins. Co.*, 824 S.W.2d 855, 859-60 (Ky. 1992) (internal citations omitted) (citation omitted).

Other than citing to case law providing general principles of insurance policy interpretation, the parties have not directed the Court to any specific authority addressing the policy language at issue here. One sister court has explained the difference between non-occupational and occupational policy provisions as follows: a "'non-occupational' or 'general' disability clause . . . insures against a disability which prevents the insured from engaging in any occupation or employment for financial gain. 'Occupational' policy provisions insure against a disability which prevents the insured from pursuing a particular occupation." *Blaustein v. Conn. Gen. Life Ins. Co.*, 207 F. Supp. 223, 224 (D.D.C. 1962).

With respect to the present policy, its terms reflect that it is hybrid policy rather than purely an occupational or non-occupational policy.[4] The policy defines the term "total disability" as follows:

---

[4] One treatise describes hybrid policies as "providing 'short term' benefits for a specified period, generally one or two years, if insureds are unable to engage in their usual occupation, and 'long

4

> We will consider you totally disabled if a sickness or injury, in and of itself, prevents you from performing the material and substantial duties of your occupation. For the first 60 months of Monthly Income benefits, your occupation means your occupation or occupations at the time disability began. However, after you have received 60 months of Monthly Income benefits due to the same disability, your occupation then means any reasonable occupation. If you are not employed at the beginning of a disability, your occupation means any reasonable occupation. Reasonable occupation is any occupation you are able to do based on your education, training and experience.

(Def.'s Mot. for Partial Summ. J. Ex. 1, at 3, DN 15-2). Thus, the policy initially provides for occupational disability coverage for a period of 60 months of benefits if Hopkins were unable to perform his occupation at the inception of his disability. After the initial, more generous benefits period, the policy provides non-occupational disability coverage such that Hopkins would be entitled to disability benefits thereafter only if the same disability rendered by him unable to perform any reasonable occupation. *See also Mut. Life Ins. Co. of N.Y. v. Bryant*, 177 S.W.2d 588, 592 (Ky. 1943) ("In such contracts (nonoccupational) the insured should be required to show physical inability not only to follow his regular occupation but also any occupation for which he may be fitted by education, training and experience, which may yield a reasonably substantial gain or profit, rising to the dignity of an income or livelihood.").

## V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1. Defendant's Motion for Partial Summary Judgment (DN 15) is **GRANTED IN PART** and **DENIED IN PART** in that the disability insurance policy at issue is a hybrid policy providing for both occupational disability and non-occupational disability benefits for different time periods following the occurrence of total disability. To the extent that Plaintiff has

---

term' benefits thereafter if the insured is unable to engage in any gainful employment." 10A *Couch on Insurance* § 146.3 (3d ed. 2016).

allegedly experienced different conditions with overlapping or consecutive periods of disability, issues of fact preclude summary judgment as this time.

      2.      Plaintiff's Motion for hearing (DN 24) is **DENIED**.

**Greg N. Stivers, Judge**
**United States District Court**

July 8, 2016

cc:      counsel of record